CHOUTEAU'S EXECUTOR & OTHERS, Appellants, *vs.* BURLANDO & OTHERS, Respondents.

1. D. was originally the owner of 10,256 arpens of land, out of which he had conveyed 4000 arpens to his son, and afterwards mortgaged 4426 arpens described as his remaining interest in the tract. A sheriff's deed subsequently conveyed all his interest in the whole tract *except* 4426 *arpens* described as *sold by the sheriff at a previous term of the court,* of which previous sale there was no evidence in the record. *Held,* the sheriff's deed passed no interest in the 4426 arpens covered by the mortgage.

2. The omission of the officer taking the acknowledgment of a mortgage to certify to the personal identity of the grantor, can only be taken advantage of by a subsequent purchaser for a valuable consideration.

3. The lapse of thirty years held no bar to the foreclosure of a mortgage upon wild and unimproved land, where neither mortgagor nor mortgagee had been in possession, there being evidence that the mortgagor abandoned all claim to the land after executing the mortgage, and that the mortgage debts were unpaid. A mortgage may be enforced so long as it is available, although the debt secured by it is barred by the statute of limitations.

4. As by our statute the letters of an administrator are revoked by the fact of his becoming a non-resident, he cannot afterwards be made a party to a suit in his administrative capacity.

*Appeal from Ste. Genevieve Circuit Court.*

This was a petition filed in March, 1854, to foreclose a mortgage executed by Pascal Detchemendy to Pierre Chouteau and others in 1822, to secure various debts owing to the mortgagees in severalty. The mortgage is the same referred to in the case of *Moreau* v. *Detchemendy*, (18 Mo. Rep. 522.) The plaintiffs were the mortgagees or their personal representatives, and the defendants were the administrator and heirs of Pascal Detchemendy, the claimants of the land, and a portion of the mortgagees or their representatives, who refused to join as plaintiffs. Upon the filing of the petition, it appearing that John L. Detchemendy, who had been the administrator, and was also an heir of Pascal Detchemendy, was a non-resident, an order of publication was made by the clerk in vacation, notifying him of the institution of the suit.

The claimants of the land answered that they were purchasers for a valuable consideration, without notice of a subsisting mortgage ; and that the claims of the plaintiffs were barred because not presented for allowance against the estate of Pascal Detchemendy within the time prescribed by law, and also by the statute of limitations. The trial was by the court without a jury.

It appeared that Pascal Detchemendy, being the owner of three adjoining surveys of land on the river Establishment, containing about 10,256 arpens, by two deeds dated respectively July 20th and September 21st, 1821, conveyed to his son, Clement Detchemendy, 4000 arpens, to be so taken as to embrace certain mills and other improvements on the west end of the tract, reserving to himself a life estate in twenty arpens, including the house in which he lived. Subsequently, on the 27th of June, 1822, he executed the mortgage in question, in which the land conveyed was described as 4426 arpens which remained to him after the conveyances to his son. The certificate of acknowledgment to this mortgage did not state that the party executing the same was personally known to the offi-

cer. On the 16th of July, 1823, after a sale under an execu-
tion against Pascal Dètchemendy, the sheriff executed to the
purchaser a deed, which, after reciting that the execution had
been levied upon " all the right, title, interest and property,
which the said Pascal Detchemendy had in and to a certain
tract of land known as the large survey of Pascal Detchemendy,
said to contain 10,256 arpens (*except 4426 arpens sold at
sheriff's sale at the last term of the Circuit Court of Ste.
Genevieve,*) situated on the river Establishment," conveyed
" all the right, title and property of him, the said Pascal
Detchemendy, in and to the aforementioned premises." There
was no evidence in the record of any previous sheriff's sale.
All the title acquired by the sheriff's deed was conveyed to
Clement Detchemendy on the 2d of February, 1827. Clement
took possession of the mills in 1821, after the deeds from his
father, and continued in possession until 1839, cutting wood
on the whole tract, but up to 1835, claiming only 4000 arpens
under the two deeds from his father, and his father's life estate
in the twenty arpens under the sheriff's deed. In 1835, he
acquired a tax title, after which he claimed the whole tract.
The tax title consisted of two deeds, which described the land
conveyed as " 2602 acres of land, being part of 6002 58-100
acres, in township 37 and 38, of range 7, survey number 884
assessed in the name of Pascal Detchemendy, and originally
claimed by Francis Moreau, and situate on Establishment ; and
1361 12-100 acres of land, being survey number 2060, in
township 37 of range 7, on Establishment, assessed in the
name of Pascal Detchemendy under Francis Poilivre ; and
1361 12-100 acres, being survey number 2059, in township
37 of range 7, on the Establishment, assessed in the name of
Pascal Detchemendy and originally claimed by him." In 1836
and 1839, Clement Detchemendy conveyed all his interest in
the entire tract to Joseph Boullier and Joseph T. Landry,
whose title was afterwards acquired by the defendants, Dah-
mon, Maller and Burlando. The parties succeeding Clement
Detchemendy had a possession of the same character as his.

Pascal Detchemendy continued to live in the house reserved in his deeds to his son until 1825, cutting wood over the whole tract, when he removed to Washington county, where he died in 1844. There was evidence in the record that he did not pay taxes on the land after executing the mortgage, and of declarations by him that he had given up the 4426 arpens to his creditors. The eastern end of the tract, supposed to be covered by the mortgage, was a pine forest, wholly unimproved, and was not sufficient to pay the mortgage debts. There was evidence tending to show that the debts had never been paid. Clement Detchemendy testified that his father was never able to pay them, and that some years after he removed to Washington county, he expressed dissatisfaction that the mortgagees did not proceed and sell the land under the mortgage. None of the mortgagees or those claiming under them were ever in possession of the land, or ever openly asserted any claim to it, although most of them resided in and near Ste. Genevieve county from the date of the execution of the mortgage. Clement Detchemendy stated that he had paid one of the debts secured by the mortgage since quitting possession of the land.

Upon the above facts, the Circuit Court declared that the plaintiffs could not maintain their suit.

*G. E. Young,* for appellant. I. The presumption of payment from lapse of time is not an absolute bar to the foreclosure of a mortgage, but may be rebutted by evidence. (2 Hilliard on Mort. 3 and 5. 10 Johns. Rep. 414. 3 Johns. Dig. 311. 7 Wend. 94. Cowper, 109.) II. The proof in this case repels any such presumption. 1. Because P. Detchemendy was insolvent and never able to pay. (Cowper, 109. 12 Vesey, jr., 266. 1 Bay, 482.) 2. There was not twenty years possession by the mortgagor or any one claiming under him. (Angel on Adverse Enjoyment, 62. 5 Wend. 295.) 3. There was payment of one of the mortgage debts within twenty years. 4. The mortgagor acknowledged the debts to subsist within twenty years. (2 Cox, 295.) 5. Because proceedings at law had been instituted by some of the creditors

within twenty years, as admitted in the answer. 6. Because the mortgaged premises were wild and unproductive lands, and not at any time heretofore of sufficient value to pay the debts. (10 Johns. Rep. 417.) 7. Because of the great number of creditors interested in this mortgage. (Hill on Trustees, 266.) III. There never has been any possession of the mortgaged premises, since Pascal Detchemendy left in 1825, by any one claiming under him or otherwise.

*Rozier, Frissell, Noell* and *Perryman,* for respondents. 1. The mortgage set up by plaintiffs is barred by lapse of time. It is more than thirty years old, and unsupported by a single act of possession during all that time. (2 Hilliard on Mortgages, p. 7, §14, p. 10, §24. 5 Johns. Ch. Rep. 552. 4 Paige, 441.) 2. The facts in proof are not sufficient to rebut the presumption of payment arising from lapse of time. There was no proof of possession by the mortgagees, no payment of interest, and no recognition by the mortgagor of the existence of the mortgage within twenty years. 3. The mortgage, not being properly acknowledged, did not operate as constructive notice to purchasers, and therefore is not binding upon the respondents. 4. The general principle that the lapse of twenty years after a right of action accrues raises the presumption of payment applies as well to mortgages as all other sealed instruments, and that, without reference to any question of fact as to possession. Possession by the mortgagee must be shown affirmatively to rebut this presumption, and it does not devolve on the mortgagor to show an adverse possession.

Scott, Judge, delivered the opinion of the court.

1. The sheriff's deed under the judgment and execution of Menard did not embrace 4426 arpens of the grant to Pascal Detchemendy. This quantity was expressly excepted, and whatever may be the operation of that deed in other respects, yet, being the conveyance of a public officer, acting *in invitum* on the rights of others, by no rule of construction applicable to

Chouteau's Ex'r *v.* Burlando.

the voluntary grants of private persons, can it be made to pass an interest which, by the very terms of the instrument, was not designed to be conveyed. This consideration disposes of the defence set up by the respondents, that they are purchasers for a valuable consideration without notice, as it appears that they have not and never had any other than the tax title to the land in controversy. If the defendants mean to rely on their tax titles, then they must be presented to the court in such a manner as that a satisfactory judgment can be pronounced upon their validity. As the record now stands, the deeds conveying those titles play no other part than to confuse and embarrass a record already sufficiently entangled and difficult to be unravelled. It does not appear whether or not those deeds cover the land in controversy.

2. It disposes, too, of the objection raised on the finding of the fact by the court that there was no declaration of a knowledge of the personal identity of the mortgagor by the officer taking the acknowledgment, as they, not being subsequent purchasers of the land mortgaged, cannot be affected by the omission.

3. The facts, as stated in the record, do not warrant the conclusion to which the court came in relation to the right of the plaintiffs to foreclose. Although a debt is barred by the statute of limitations, so that an action cannot be maintained to recover it, yet, if that debt is secured by a mortgage, its payment may be enforced, so long as the mortgage is available. (Angel on Lim. 77–8.) An important consideration is, that the land was wild and unimproved. The portion of the large grant on which the mortgagor resided, which, however, was no part of the mortgaged premises, was abandoned by the mortgagor a few years after the forfeiture of the mortgage, and he never returned to it. The mortgagor complained of the delay in foreclosing the mortgage. His own son testified to his inability to pay his debts. There was no possession by the mortgagor, in the sense that is required, in order to raise the presumption of satisfaction of the debts. Under the cir-

cumstances, it is as fair to presume that the mortgagee was waiting for an enhancement of the value of the mortgaged premises, as they were insufficient to satisfy the debts, as to presume the satisfaction of the mortgage from the delay in bringing suit. Neither party was in possession. The land was wild and uncultivated. In such case, the most natural presumption would be, that things continued as they were at the beginning.

As Pascal Detchemendy died in the year 1844, we may suppose that the debts were all barred at that date, so that an action at law could not be maintained for their recovery. No inference, therefore, unfavorable to the mortgagees, can arise from their failure to present them to the administrator for allowance, even had there been assets in his hands sufficient to satisfy them.

After twenty years' possession by the mortgagee, the burden is on the mortgagor to show that such length of possession does not bar a right of redemption. The mere declarations and conversations of the mortgagee in possession, have not been received to destroy the presumption of payment arising from twenty years' possession. (Angel on Lim. 497.) But when declarations and conversations come in aid of the fact of abandonment of the mortgaged premises, which is open and notorious, there would seem to be no impropriety in receiving them.

So, on the other hand, where the mortgagor has been permitted to retain possession, the mortgage will, after a length of time, be presumed to have been discharged by payment of the money or a release, unless circumstances can be shown sufficiently strong to repel the presumption, as payment of interest, a promise to pay, an acknowledgment by the mortgagor that the mortgage is still existing and the like. (*Hughes* v. *Edwards*.) In the absence of all possession by the mortgagor or the mortgagees, it is obvious that these principles have nothing to do with the case under consideration.

4. It is strange that an order of publication should have been made against John L. Detchemendy, as non-resident adminis-

trator.   The 58th section of the 1st article of the act concern-
ing administration, enacts that letters of administration, in no
case, shall be granted to a non-resident, and when an execu-
tor or administrator shall become non-resident, his letters shall
be revoked.  If the administrator, as such, was a necessary
party to the suit, the proper course to be pursued was, to have
the first letters revoked and another administrator appointed.
The administrator not having been properly a party before the
court, no judgment affecting the estate of which he was admin-
istrator, can be rendered against him for costs or any other
thing.      •

The judgment will be reversed, and if there is any thing in
the tax titles of the defendants, they can in a future trial be
presented in an intelligible way.   The other judges concur.