## LONGAN v. CARPENTER.

MORTGAGE — *not assignable at law.* The assignee of a mortgage has no remedy upon it at law, except it be treated as an absolute conveyance and the mortgagee convey the premises by deed.

*Same* — *assignable in equity.* But if a promissory note secured by mortgage is assigned, the assignee will hold the mortgage subject to the equities existing between the mortgagor and mortgagee at the date of the assignment.

MORTGAGE ASSIGNED — *rights of parties.* At law the innocent holder of a negotiable note may recover the amount thereof; but if the note is secured by mortgage and the holder seeks to foreclose the mortgage, the mortgagor can avail himself of any payments made to the mortgagee before the assignment.

*A promissory note secured by mortgage* and by pledge of personal property was assigned before maturity to a *bona fide* purchaser. Previous to the assignment a portion of the pledged property was sold by the payee, but no credit was indorsed on the note. In a suit by the assignee to foreclose the mortgage, *held,* that the mortgagor was entitled to be credited with the amount realized by the payee from the sales of the pledged property.

*Appeal from District Court, Jefferson County.*

APPELLEE filed his bill to foreclose a mortgage given by appellant to Jacob B. Carpenter. He alleged that the mort-

gage was given to secure a note for $980, dated March 5, 1867, payable six months after date at the Colorado National Bank to Jacob B. Carpenter or order, that on the 24th of July, 1867, Jacob B. Carpenter assigned the note and mortgage to him.

Appellant in her answer denied all knowledge of the assignment and averred that, at the date of the mortgage, in addition to the mortgage security, she delivered to J. B. C. as collateral and further security for the sum of money specified in the note and mortgage, 103 sacks of good merchantable wheat flour then of the value of $1,236, and 7,500 lbs. of wheat then of the value of $450, which, she alleged, said J. B. C. agreed to sell and apply to the payment of the sum due him on said note and mortgage; or, if not sold, to return on payment or tender of payment of the sum of money specified in the note and mortgage. Appellant also alleged, that, at the maturity of the note, she tendered the sum of $1,180 at the Colorado National Bank in payment of the note, and demanded the return of the note and mortgage and the flour and wheat to her, which was refused. Appellant averred further, that J. B. C. appropriated the said flour and wheat, of the value of $1,686, to his own use and refused to account therefor. The master found that there was due upon the note and mortgage $1,622.68. At the hearing, the deposition of William Longan was read. He testified that the mortgaged premises belonged to his mother, the appellant; that appellant borrowed from J. B. C. $980, and gave the mortgage and 100 sacks of flour and 7,520 or 7,530 lbs. of wheat as security; that the flour and wheat were in a house on Blake street belonging to Williams & Miller, and that J. B. C. took Williams & Miller's receipt for it; that J. B. C. authorized witness and his brother to take the flour and wheat to the mountains and dispose of it, if they would pay to Williams & Miller the market price for the same in Denver; that Williams & Miller should indorse the amount so paid on the note. That, in the latter part of April or 1st of May, 1867, witness

got 560 or 660 lbs. of wheat from Williams & Miller and paid them 4½ cents per lb. for it; that this was a portion of the wheat given to J. B. C. as aforesaid; witness at other times got flour of the same lot and paid Williams & Miller therefor at $8.50 a sack; witness could not tell the exact number of sacks he got; in July, 1867, Williams & Miller failed in business and witness found a lot of the flour and wheat being disposed of; witness went to J. B. C. and tried to get him to save the wheat and flour. J. B. C. stated that he was not going to get himself in any law suit about it, and declined to take any steps about the matter; said that he was sufficiently secured by the mortgage and that he would give the warehouse receipt for the flour and wheat back to witness; that he would assign the receipt to witness so that he could go and get the flour and wheat.

Witness further stated that, after Williams & Miller failed, Mr. Miller of that firm told him that J. B. C. was the owner of the flour and wheat, and that he would account to him alone for it, which he had done, and that J. B. C. had authorized its disposal, and that witness would look at Williams & Miller's books and they would show just what had been done with the flour and wheat. Witness told J. B. C. what Miller had said, and J. B. C. said he would give witness the receipt. When witness asked him where it was, he said witness would have to go to his lawyers as they had his papers. On cross-examination witness stated: The wheat and flour was in the warehouse of Williams & Miller before the loan was made; that we had before that time borrowed money, about $600, on the flour alone; the first loan was about sixty days before that of J. B. C.'s was made; the grain and flour belonged to witness and his brother; the warehouse receipt was given to Mr. Kountze as security for the first loan; the old warehouse receipt was taken up, with the money borrowed of J. B. C., and the first loan so paid off.

Jesse B. Longan testified that he pledged the flour and grain to J. B. C. as security for the payment of the note;

that he had previously borrowed money at the bank, and that Williams & Miller became his security therefor, and they had the flour in their possession ; that Williams & Miller arranged the loan with J. B. C. and that the money was borrowed of J. B. C. for himself and his brother William Longan ; that the flour and wheat were owned by himself and William Longan ; in other respects his testimony was substantially the same as that of William Longan.

Jacob B. Carpenter testified that he assigned the note and mortgage to B. Platte Carpenter, the complainant below, in July, 1867 ; that, when the flour and wheat were pledged to him, it was understood that the same should lay in the store of Williams & Miller until the note became due, unless ;the Longans should take a portion thereof to the mountains, and in that event, the Longans would pay to Williams & Miller the market price therefor in Denver, and the amount so paid was to be indorsed on the note. This witness also testified as to the circumstances attending the failure of Williams & Miller. He also stated that he received $1,000 upon the assignment of the note and mortgage, and that he never received any of the proceeds of the sales of the wheat and flour nor ordered the sale of it, nor exercised any control over it in any manner whatever.

There was other testimony corroborating the foregoing and also conflicting testimony as to the tender alleged to have been made by the respondent, which it is unnecessary to refer to. An assignment of the mortgage executed by J. B. C. was given in evidence and also the promissory note before mentioned, which was signed by Mahala Longan and Jesse B. Longan, and appeared to have been indorsed without recourse by J. B. C.

The court decreed for the complainant below, and found that there was due to him the sum of $1,820, being the full amount of the note, and that the mortgage premises be sold to satisfy the same.

Messrs. BROWN & MECHLING, for appellant.

Mr. ALFRED SAYRE and Mr. DANIEL SAYRE, for appellee.

BELFORD, J. This was a bill in chancery to foreclose a mortgage filed by the appellee, as the assignee of one Jacob B. Carpenter. The mortgage was given to secure a negotiable note. The mortgage bears date March 5th, 1867, and is payable to Jacob B. Carpenter or his heirs or assigns, and was by him assigned to the complainant on the 20th day of July, 1867. The assignment was properly recorded on the 7th day of February, 1868. The defendant, in her answer, denies all knowledge of the assignment, and avers that at the date of said mortgage, she, in addition to the said mortgage security, delivered to the said Jacob B. Carpenter, as collateral and further security for the payment of the said sum of money, specified in said note and mortgage, one hundred and thirty sacks of good merchantable wheat flour, then of the value of $1,236, and seven thousand five hundred pounds of wheat of the value of $450, which she alleges said Carpenter agreed to sell and apply to the payment of the sum due him on said note and mortgage, or, if not sold, to be returned on payment or tender of payment of said note and mortgage. She further charges that said Carpenter sold said flour and wheat, and appropriated the sum to his own use, and refuses to account to her for the proceeds. This cause has been ably argued by counsel, and has received great consideration from this court. The principle involved has never been before adjudicated in this territory, and in the States where it has received judicial notice the decisions are in direct conflict. It is claimed by the appellee that the note secured by the mortgage is a negotiable note, that it was negotiated before due, and that the assignee being a *bona fide* purchaser of the note without notice, took it and the mortgage freed and discharged from all equities and defenses that existed in favor of the mortgagor and against the mortgagee. There is no evidence showing that B. Platte Carpenter had, before or at the time of the assignment of the note, any knowledge of the wheat and flour given by Mahala Longan as further security to Jacob B. Carpenter.

It is contended by the appellant, that, having taken

VOL. I. — 27

security by way of mortgage, that that security qualifies the rights of the mortgagee and those claiming under him, and that, when an action is brought to foreclose the mortgage, that that instrument, together with the note secured thereby, passes into the category of obligations to which defenses and equities may attach and be made available into whosesoever hands they fall. We are free to admit that this question is surrounded with great difficulties, and deeply regret that no settled and uniform rule exists in this country on the subject. The supreme courts of Wisconsin, Michigan and Illinois, so far as we have been able to discover, are the only courts that have passed upon the matter in controversy. In Illinois, the rule is laid down as claimed by the appellant. They hold there that, although the note secured by the mortgage is negotiable, still it is open to whatever defenses existed against the mortgagee. A different rule obtains in Wisconsin and Michigan. Amid this conflict of authorities, we feel at liberty to choose our course, and shall endeavor to follow that which, in our judgment, is recommended by the better reason. What relation does a mortgage sustain to a note secured by it? In one sense, it is a mere incident to the debt. He who owns the note owns the mortgage. The assignee of the former is entitled to the benefits of the latter, although the assignee did not know of its existence. *Kyes* v. *Wood*, 21 Vt. 331. But it must be borne in mind that these principles are the outgrowth of equity, and equity alone. At common law, choses in action were not assignable. For the convenience of commerce, by the statute of Anne, in England, certain choses in action were made assignable, so as to vest in the assignee the legal title, as promissory notes or bills of exchange. We have a statute to the like effect, which prescribes that any promissory note, bill, bond or other instrument in writing, whereby one person promises to pay another any sum of money or article of personal property, or sum of money in personal property, shall be assignable by indorsement thereon.

The mortgage, to foreclose which this bill was filed, was

given to secure the payment of a promissory note which was
assigned by the payee and mortgagee to the complainant.
This was in equity an assignment of the mortgage.   The
note was assignable by the statute, but the mortgage is not
nor is it assignable by the common law.   The assignee of a
mortgage has no remedy upon it by law, except it be
treated as an absolute conveyance, and the mortgagee con-
vey the premises by deed.   The 22d section of the statute,
page 377 (Revised Statutes of Colorado), provides that if
default be made in the payment of any sum of money
secured by the mortgage on lands and tenements duly exe-
cuted and recorded, it shall be lawful for the mortgagee, his
executors or administrators, to sue out a writ of *scire facias*,
etc.   Here the remedy is specifically confined to the mort-
gagee, his executors or administrators.   The assignee can-
not proceed at law and sue out a *scire facias*.   To avail
himself of his mortgage security he is driven to the court of
chancery.   His remedy is purely equitable, and seeking
equity he must be willing to do equity.   He who buys that
which is not assignable at law, relying upon a court of
chancery to protect and enforce his rights, takes it subject
to all infirmities to which it is liable in the hands of the
assignor, and the reason is, that equity will not lend itself to
deprive a party of a right which the law has secured him, if
such right is intrinsically just in itself.   "Mortgages," says
Chief Justice CATON, in *Olds* v. *Cummings*, 31 Ill. 192, "are
not commercial paper.   It is not convenient to pass them
from hand to hand, performing the real office of money in
commercial transactions as notes, bills and the like.   When
one takes an obligation secured by a mortgage, relying
upon the mortgage as security, he must do it deliberately,
and take time to inquire if any reason exists why it should
not be enforced.   While he may take the mere promise to
pay the money as commercial paper and depend upon the
personal security of the parties to it, it may be said to be
a distinguishing characteristic of commercial paper, that it
relies upon personal security, and is based upon personal
credit.   It is a part of the credit system, which is said

to be the life of commerce, which requires commercial investments to pass rapidly from hand to hand. Mortgage securities are too cumbersome to answer these ends. The note itself, though secured by a mortgage, is still commercial paper, and when the remedy is sought upon this, all the rights incident to commercial paper will be enforced in the courts of law. But when the remedy is sought through the medium of the mortgage; when that is the foundation of the suit, and the note is merely used as an incident to ascertain the amount due on the mortgage, then the courts of equity, to which resort is had, must pause and look deeper into the transaction and see if there be any equitable reason why it should not be enforced. He who holds a note and also a mortgage holds in fact two instruments for the security of the debt; first, the note with its personal security, which is commercial paper, and as such may be enforced in the courts of law, with all the rights incident to such paper; and the other, the mortgage with security on land, which may be enforced in the courts of equity, and is subject to the equities existing between the parties. The right of an assignee to set at defiance a defense which could be made against the assignor is an arbitrary statutory right, created for the convenience of commerce alone, and must rely upon the statute for its support, and is not fostered and encouraged by courts of equity."

This doctrine, so clearly enunciated by Chief Justice CATON, is re-asserted and enforced by Chief Justice WALKER in the case of *Walker* v. *Dement*, 42 Ill. 273. In delivering the opinion in this latter case he says, that while the purchaser of a note before maturity without notice will be protected against all defenses to the note, still, if it is secured by mortgage or other collateral security, the assignment will not cut off prior equities against the mortgage or collateral fund, although they might be secret and latent. There are many cases in which assignees have been protected against latent equities of third persons, whose rights and even names do not appear upon the face of the mortgage, and the reason

is, that it is the duty of the purchaser to inquire of the mortgagor if there be any reason why it should not be paid ; but he should not be required to inquire of the whole world to see if some one has not a latent equity which might be interfered with by his purchase of the mortgage, as for instance a *cestui que trust.*

In the case of *Merry* v. *Sylburn,* 2 Johns. Ch. 441, Chancellor KENT said :

"It is a general and well-settled principle that the assignee of a *chose in action* takes it subject to the same equities it was subject to in the hands of the assignor. But this rule is generally understood to mean the equity residing in the original obligor and not an equity residing in some third person against the assignor." In *Westfall* v. *Jones,* 23 Barb. 10, the court said :

"Does the plaintiff, being a *bona fide* purchaser and assignee of the bond and mortgage, stand in any better condition than the person from whom he derived his title? It is a well-settled principle that the assignee of a chose in action takes it subject to all equities which existed against it in the hands of the assignor." The same rule is laid down in Pennsylvania in *Mott* v. *Clark,* 9 State, 399, and in *Prior* v. *Wood,* 31 Penn. St. It may be objected to these decisions, that the mortgage in each of the cases was given to secure a bond, and that the bond having no commercial character, the party taking an assignment would, as a matter of course, take the mortgage burdened with infirmities which the statute prescribes shall not apply to negotiable notes transferred before due.

These cases are made to rest on another and different ground, namely, that the proceeding was on the mortgage itself, and there being no express statutory provision authorizing the assignment of the mortgage. But it may be urged that the mortgage is accessory to the note, that it is attached to it, and being so attached, it is, and must remain, inseparable. This is true as long as both instruments remain in the hands of the mortgagor. But when he assigns the note there is in law a separation. The assignee can take his note

into a court of law and recover a judgment upon it, but he cannot take the mortgage there; he cannot claim the benefit of it there.   He is confined simply to his remedy on the note.   Whatever judgment he recovers is purely a personal one.   He will not be heard to say that the maker of the note pledged a special fund, out of which the debt must be satisfied.   The court could reply, and with reason, whatever your rights may be in equity, one thing is certain, there is no law authorizing your assignor to transfer to you the mortgage.   It does not follow you into this court. How is it when he brings his action on the mortgage in a court of equity?   Then the mortgage is the foundation of the suit, and the remedy sought is the foreclosure of the equity of redemption.   The note is used to compute the amount; it has no other office to perform.   The mortgage in one sense, and in an important one too, has a character of its own.   If one holds a note, against which the statute of limitations has run, and also a mortgage or pledge of real or personal property to secure it, he cannot sue on the note, but he can take and hold possession of the property, and sell it if it be personal property, with proper precautions, and if real property, he can have a bill in equity to foreclose his mortgage, and if his lien fails to pay the whole of his debt, he loses the remainder, because he can have no action upon it, although he may have proper process founded upon the debt and security to establish his lien and make it available in the payment of his debt.   A mortgage may be enforced so long as it is available, although the debt secured by it is barred by the statute of limitations. Parsons on Contracts, vol. 2, 379; 20 Mo. 482; Angell on Limitations, 77, 78.   It is also well established that, if a legal tender is made of money due on a bond and mortgage to the mortgagee, or his assignee or attorney, which is refused, the land is discharged from the mortgage though the debt remains.   *Jackson* v. *Bowers*, 18 Johns. 110; 6 Hill, 65; 21 Wend. 467; and 26 id. 541.   Does not this indicate that the mortgage and the instrument which it secures have separate and independent characters?   This is sufficient to

show that it has a character of its own. But it may be urged, if this had been an action at law on the note itself, that the assignee could not have been chargeable with equities or defenses, which might have existed against the same in the hands of the assignee or original payee, and of which the complainant was ignorant at the time of assignment, and that it being commercial paper he could have obtained judgment for the full amount expressed in the note, and on execution this same land described in the mortgage might have been levied on and sold to satisfy the same. Admitting this to be true, yet in this case the purchaser of the land under the sale would hold it subject to the mortgagor's right of redemption. *Thornton* v. *Pegg*, 24 Mo. 247. There is a reason why in an action on the note he would be entitled to recover the full amount, namely, a court of law cannot take cognizance of equities that in a court of chancery would not only be recognized but rigorously enforced. The books are full of cases where a judgment has been rendered in a law court against a defendant one day and the same judgment enjoined by a court of chancery the next.

It is true that the principles governing and controlling a court of chancery are as fixed and certain as are those which control a court of law, and one of those principles governing a court of chancery is, that he who invokes its equitable powers must be ready to do equity. But this discussion has already been protracted to a sufficient length. What was the equity of the mortgagor in this case? What relation did Jacob B. Carpenter sustain to the wheat and flour received by him as security in addition to the mortgage, and how far is the complainant affected thereby? We think it was a pledge. The contract of pledge is a bailment or delivery of goods and chattels of one man to another, to be holden as a security for the payment of a debt or the performance of an engagement, and upon the express or implied understanding that the thing deposited is to be restored to the owner as soon as the debt is discharged or the engagement has been fulfilled. The con-

tract is to be distinguished from the contract of hypotheca-
tion by the transfer of the possession or the delivery of the
thing intended to be charged to the creditor, and from the
contract of mortgage by the absence of a transfer of the
ownership and right of property thereof in the premises
during the continuance of the trust. If the thing intended
to be burdened with the debt or charge remains in the pos-
session and under the disposition of the owner, there is no
pledge. By a pledge, therefore, of the goods and chattels
the right of possession is altered, but not the right of prop-
erty. Was the wheat and flour in the possession and
under the control of Jacob B. Carpenter? He had the
receipt of the warehousemen for it. Mahala Longan could
not have conveyed the same to any one freed and discharged
from his lien upon it. Miller & Williams, the warehouse-
men, were liable to him, on their receipt, for the amount
expended on it. If any one had carried away and con-
verted the wheat to his own use, Carpenter could have
maintained an action for it, and the production of the
receipt in evidence would have been proof of his title.
Part of this wheat and flour, while in the possession and
under the control of Jacob B. Carpenter, and before the
assignment of the note, was sold, and the money paid to
Miller & Williams, his depositaries. He recognized them
as his agents by accepting their receipt, and the money paid
by them for the wheat and flour sold was equally under his
control, and could have been collected by him. If he failed
to apply this money on the payment of the note and mort-
gage, and allowed it to remain in their hands until it was
dissipated and squandered, he must suffer the loss, not
Mahala Longan, who had no right to the possession of it.
And if, in an action by Jacob B. Carpenter, Mahala Lon-
gan would have been entitled to recoup the amount of
money paid to Miller & Williams for the wheat pledged,
under the rule we have announced in this opinion, his
assignee stands in no better position, and this money, so
paid, must operate as a satisfaction, *pro tanto*, of the note
and mortgage. As to the wheat and flour that remained in

the hands of Miller & Williams at the time of the assignment of the note to the present complainant, we express no opinion further than to say, that it never passed to B. Platte Carpenter, and that, if any liability attaches to any one, it must be to Jacob B. Carpenter, and on his liability we purposely refrain from expressing any opinion.

For the failure of the court below to allow credit on the mortgage for the wheat sold prior to the assignment of the note, this case . must be remanded and reversed. It is accordingly reversed, with costs, for further proceedings in accordance with this opinion.

HALLETT, C. J., dissenting.    Mahala and Jesse B. Longan made their negotiable promissory note of date March 5, 1867, payable to J. B. Carpenter six months after date.    To secure this note Mahala Longan mortgaged to J. B. Carpenter certain lands in Jefferson county, and the note and mortgage having been assigned to the appellee before the maturity of the note, this bill was filed to foreclose the mortgage.

The defense set up by the appellant in her answer is, that at the time the note and mortgage were given she pledged to J. B. Carpenter certain wheat and flour, and that at the maturity of the note she tendered the amount due upon it at the Colorado National Bank, where it was left for collection, and demanded the note and mortgage, as well as the wheat and flour.

The answer was put in without oath, the verification being waived by the complainant in his bill according to the statute, and therefore evidence is required to support its averments.    In the first place it is to be observed, that the evidence does not support the allegation that the appellant gave to J. B. Carpenter the wheat and flour as security for the payment, but shows on the other hand, that this wheat and flour was pledged by William and Jesse B. Longan.    It is true that William Longan testifies that the appellant gave the personalty as additional security, but this statement is overborne by the other testimony in the case.    Upon the

VOL. I. — 28

whole testimony it appears that William and Jesse B. Longan were the owners of the flour and wheat, and at the time the note was made the property was in the warehouse of Williams & Miller, where it had been placed for safe-keeping. William and Jesse B. Longan had previously obtained a loan upon the same property, and as the greater part of the money obtained from Carpenter was to be applied to the payment of this pre-existing indebtedness, the same property was at first offered as security for the note in this case. This security being refused by Carpenter, the mortgage in this case, together with the pledge of the personal property, was offered as security for the note and accepted. Jesse B. Longan testifies that he gave the personalty to Carpenter as security for the note, and that the money was borrowed for himself and his brother. The whole testimony shows that Mahala Longan became a party to the transaction for the purpose of mortgaging her real estate to secure the payment of the money borrowed by her sons, that she was not the owner nor was she in possession of the personal property, and that the latter, if pledged at all, was pledged by the sons and not by the mother. Hence it is not true, as alleged in the answer, that the appellant gave to J. B. Carpenter personal property as security for this note, and the proof failing to support the allegation, the defense must be rejected. Gresley's Eq. Ev. 232.

Accepting these facts as if they were well pleaded, and assuming, what is by no means clear upon the evidence, that the amount due upon the note was tendered at its maturity, how was the appellant entitled to demand the possession of the personalty upon the payment of the note? Surely upon the extinguishment of the note the property would revert to the pledgors, William and Jesse B. Longan, and the appellant would be no more entitled to the possession then than before the pledge was made.

Again, the rule which makes the assignment of a mortgage subject to the equities existing between the mortgagor and mortgagee is expressly confined to such equities only, and cannot be extended to equities existing between the

mortgagee and third parties. *James* v. *Morey*, 2 Cowen, 297.

In this case the personalty was pledged by Wm. and Jesse B. Longan, and whatever their rights against J. B. Carpenter, the appellant is a stranger to them. This doctrine is recognized by the court in this case, but I do not perceive that any attempt has been made to apply it. It is true that there is evidence in the record tending to prove an agreement, respecting the wheat and flour, between the pledgors and the pledgee, to the effect that the property might be sold to the pledgors by the warehousemen and the proceeds applied to the payment of the note, and, also, that some of the property was sold according to this agreement. If J. B. Carpenter was responsible for the money thus received, probably this was a payment upon the note which, according to the view of my brethern, would inure to the benefit of the appellant. But conceding this, the appellant should have set up the payment in her answer. She has pleaded a tender of the whole amount due upon the note, and complains that the pledged property and the note and mortgage were not surrendered to her when the tender was made, and to this defense she must be confined. If, under such an answer, a party may show payment, every other defense is equally open, and the rule which requires correspondence between proof and allegation may as well be annulled.

I come now to consider, whether the innocent holder of negotiable paper secured by mortgage may recover upon the mortgage the amount due upon the note in his hands, or is limited to the amount which might be recovered by the mortgagee if the suit were instituted by him. Upon this question there is some conflict of opinion, but I think that the weight of authority and the better reason are opposed to the views of my brethren in this case, and therefore I reluctantly proclaim my dissent from the opinion of the court.

The nature of a mortgage and its relations to the indebtedness it is intended to secure are pretty well understood at

this day, and do not demand much discussion.   In *Martin* v. *Mowlin*, 2 Burr, 978, Lord MANSFIELD said :

"A mortgage is a charge upon the land, and whatever will give the money will carry the estate in the land along with it to every purpose.  The estate in the land is the same thing as the money due upon it."

So, also, KENT, C. J., in *Jackson* v. *Willard*, 4 Johns. 43 :

"Until foreclosure, or, at least, until possession taken, the mortgage remains in the light of a chose in action.  It is but an incident to the debt, and in reason and propriety it cannot and ought not to be detached from its principal. The mortgage interest, as distinct from the debt, is not a fit subject of assignment.  It has no determinate value.  If it should be assigned, the assignee must hold its interest at the will and disposal of the creditor who holds the bond. *Accessorium non ducit sed sequiter principale.*"

To the same effect are all the authorities and no one can now be found to question the doctrine that a mortgage is a mere incident to the indebtedness it is intended to secure, inseparable from it and incapable of existence without it. It is a truism of the law that a mortgage is a security for indebtedness accompanying the latter through all hands, and ultimately sharing the same fate.   This rule which identifies the security with the indebtedness in my opinion requires, that the remedy upon the security shall be co-extensive with the demand.    When this is denied the mortgage is divested of its character as a security to the extent of such denial.    By the mortgage contract a lien is given upon property for the payment of certain indebtedness, and if the indebtedness be withdrawn from the lien, or if the existence of the lien be denied for causes *dehors* the mortgage, that instrument is divested of its essential quality in the face of its express provisions.    That is no security for indebtedness which will not come up to the point of contributing to its payment, and a mortgage intrinsically good, which falls short of the measure of its principal, is a paradox unknown to the law.    To illustrate, let us look for

a moment at the present case. A negotiable note secured by mortgage was indorsed to appellee before maturity upon a valuable consideration. It does not appear that the pledged property was delivered to appellee, or that he had any knowledge of it, so that no notice need be taken of that feature of the case. Neither law nor equity will deny to the appellee, as a *bona fide* holder for value, the full amount of the note when that instrument is presented. But it is said, that the action being to foreclose the mortgage, the amount of the note must be diminished by the sum received by the payee or his agents before the assignment to appellee. The mortgage is, in itself, valid and effectual, according to its legal character as a security for the indebtedness evidenced by the note. The note is intrinsically good, and, in the hands of the appellee, constitutes a demand against the appellant, for the amount expressed upon its face. Each instrument is perfect in itself, the one as a demand against appellant, the other as security for that demand, and yet when united, and a remedy to enforce the lien is sought, the security of the mortgage is denied as to a portion of that demand. In other words, the mortgage has ceased to be a security as to part of the indebtedness evidenced by the note, its express provisions to the contrary notwithstanding. It appears to me that the mortgage having been made as a security for the payment of the note, it ought to stand as a security for the whole note, extinguishable only upon payment of the whole amount recoverable upon it. Any other view is opposed to the rule which unites the mortgage to the indebtedness inseparably and gives them a common existence.

In this connection I will ask attention to the language of the supreme court of Wisconsin upon this subject.

" The doctrine that an assignee can enforce the mortgage for no more than is justly and actually due between the mortgagor and the mortgagee had its origin at a time when the practice of giving mortgages as collateral security for the payment of negotiable paper was wholly unknown, and was made to rest upon the ground that such would be the

rule adopted in a suit at law, upon the covenant or bond to which the mortgage was collateral, and the assignee should stand no better in equity than at law. The reason of the rule being, that because, in a suit at law for the use of the assignee upon the bond or covenant to collect the debt, a recovery cannot be had for a greater sum than is actually due from the mortgagor to the mortgagee, and therefore no more shall be recovered in equity in an action to foreclose the mortgage, or that the parties as to rights and remedies shall stand upon the same footing in both courts; it follows, as a logical conclusion, that when the nature of the instrument evidencing the debt and the circumstances of the transfer are such, that in a suit at law upon it against the mortgagor the assignee can enforce its payment regardless of any equities existing between the mortgagor and mortgagee. he should have the same rights and remedy in equity. The reason of the rule ceasing in the case of negotiable securities transferred before maturity and without notice. the rule also ceases. The debt is the principal thing, the mortgage the incident, the transfer of the debt carries with it the mortgage. It is the debt which gives character to the mortgage and fixes the rights and remedies of the parties under it, and not the mortgage which determines the nature of the debt." *Croft* v. *Bunster*, 9 Wis. 509. See, also, *Dutton* v. *Joes*, 5 Mich. 519; *Reeves* v. *Scully*, Walker's Ch. 248.

Another consideration of great weight ought not to pass unnoticed. It is conceded that the appellee *may* recover in an action at law, upon this note, that portion of his demand which is denied to him in this proceeding. It was said by HOSMER, C. J., in *Clark* v. *Beach*, 6 Conn. 159 : " The equitable doctrine concerning the rights of mortgagor and mortgagee has gradually been naturalized in the common-law code, and by the adoption of principles long established in chancery, and tenaciously adhered to, the suitors are not driven from one bar by increased litigation and expense to obtain infallible relief at another."

The policy of the law here defined has not, I think, been

heeded in this case. The appellant is protected from the payment of a portion of the appellee's demand, to which she must hereafter respond in a court of law, while the appellee is driven from this bar by increased litigation and expense to obtain infallible relief at another. The case of *Olds* v. *Cummings*, 31 Ill. 188, is the authority upon which the decision of this court is based, and that case is grounded upon the assumption that a foreclosure suit is brought upon a mortgage only. The court in that case say :

"The note itself, though secured by a mortgage, is still commercial paper, and when the remedy is sought upon that, all the rights incident to commercial paper will be enforced in the courts of law. But when the remedy is sought through the medium of the mortgage, when that is the foundation of the suit, and the note is merely used as an incident to ascertain the amount due upon the mortgage, then the courts of equity to which resort is had must pause and look deeper into the transaction, and see if there be any equitable reason why it should not be enforced."

Upon this I submit that a foreclosure is founded upon the indebtedness as well as the mortgage. A court of equity will not, and in the nature of things cannot, permit a mortgagee to recover unless he is the holder of the indebtedness secured by the mortgage. 1 Hill. on Mort., ch. 11, § 5.

Whether the proceeding be at law or in equity, the indebtedness is the principal thing, for both remedies are designed to enforce payment of the money. I concede that the remedy at law is upon the note alone, but it is equally plain that the suit in equity is founded upon the note and mortgage, and that each is essential to the right of recovery. The indebtedness is the incumbrance and the mortgage is the means by which the incumbrance is attached to the estate. If either be removed, there is nothing remaining upon which the court can act. In a proceeding to foreclose a mortgage it is the duty of the court to ascertain the amount of the indebtedness, as well as to enforce the lien upon the mortgaged property for its payment, and while the mortgage will show the lien it is rarely evidence of the

indebtedness. Sometimes a covenant for the payment of the money is inserted in the mortgage, but usually a bond, note or other separate instrument is executed for the purpose of showing the amount of the indebtedness. Where the indebtedness is evidenced by a separate instrument a court of equity is as much bound to give effect to that instrument as to the mortgage. In this case the note is evidence of the amount of the indebtedness just as the mortgage is evidence of a lien upon certain property for the payment of that indebtedness, and the court is bound to give effect to the first as well as the second. The note is the legal and unquestionable evidence of the indebtedness as the mortgage is evidence of the lien, and each according to its office determines the rights of the parties. It is impossible to say that there is any thing due upon the mortgage disconnected from the note for the reason that the note alone determines the amount of the indebtedness.

The supreme court of Illinois say that the note is "merely used as an incident to ascertain the amount due upon the mortgage," but it is plain that no such use was made of the note in that case. The note called for the amount expressed upon its face, but the court refused to recognize the demand. The mortgage referred to the note as the standard of indebtedness, but the court rejected the note in violation of the express language of the mortgage. And this was done for the avowed purpose of protecting the mortgagor from making payment to the innocent holder of negotiable paper. I am not able to perceive that the former occupies a higher position in a court of equity than the latter, or that there is any reason for setting aside the rules of law applicable to commercial paper in cases of this kind.

The opinion of that court as well as that announced by this court is open to other criticism, but I think that I have shown that the ruling of the district court was correct, and that the decree of that court should be affirmed.